IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLEN PAUL HARPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-02785-BP |
| | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Glen Paul Harper applied for Title II Disability Insurance Benefits ("DIB") and Title XVI

Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner

denied his application, finding that he was not disabled. Harper appealed, but the Social Security

Appeals Council rejected his request for review. At issue is whether substantial evidence supports

Administrative Law Judge ("ALJ") Charles Walters' assessment of Harper's residual functional

capacity and the ALJ's findings concerning jobs that Harper can perform in the national economy.

Finding that substantial evidence does not support these determinations, the Court **REVERSES**

the Commissioner's decision and **REMANDS** the case.

## I.    BACKGROUND

Harper first applied for DIB on February 18, 2022 and SSI on March 1, 2022, alleging

disability beginning March 1, 2021. Soc. Sec. Admin. R. (hereinafter "Tr.") 18, 39. On April 19,

2024, the ALJ denied his application. *Id.* at 18-29. Harper appealed the decision to the Appeals

Council, which denied review on September 18, 2024. *Id.* at 5. This marked the final decision of

the Commissioner, and the matter became appealable to this Court. *Higginbotham v. Barnhart*,

405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review.").

On November 5, 2024, Harper filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.    STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently engaged in any substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpart P, app. 1). Before proceeding to steps

four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC is "the most [a claimant] can still do despite his limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

Previously, PRW meant work the claimant performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The definition has since changed, and as of June 22, 2024, PRW means the "work that you have done within the past five years that was substantial gainful activity and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(2). The Commissioner made his decisions regarding Harper's application prior to June 22, 2024, so the previous definition is proper in this case. *See* Tr. at 29.

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing []he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

III.    ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 18-29. First, the ALJ found that Harper had not engaged in substantial gainful activity since March 1, 2021. Tr. 21. Next, at the second step, the ALJ found seven medically severe impairments: osteoarthritis, degenerative disk disease, diabetes mellitus, neuropathy, hypertension, cataracts, and obesity. *Id.* Third, the ALJ identified no impairment or combination of impairments that qualified under the federal regulatory list. *Id.*

The ALJ then assessed Harper's RFC:

> After careful consideration of the entire record, the undersigned finds that [Harper] has the [RFC] to perform sedentary work as

4

defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift and carry less than ten pounds. He can sit for six hours, stand for two hours, and walk for two hours. He can occasionally push and pull ten pounds and he can frequently push and pull less than ten pounds. He can operate foot controls with his right foot occasionally, and he can operate foot controls with his left foot occasionally. He can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. He can never balance. He can occasionally stoop, kneel, crouch, and crawl. He is able to see to avoid ordinary hazards in the workplace.

Tr. 22.

Now at the fourth step, the ALJ used this RFC and relied on testimony from a vocational expert ("VE") to determine that Harper cannot perform his PRW as a Delivery Driver (DOT 905.663-014/medium/svp 4) and a Driver and Car Preparer (DOT 919.663-010/light/svp 3). Tr. 27. Finally, at the fifth step, the ALJ considered the RFC, the VE's testimony, and Harper's age, education, and work experience to conclude that there are jobs that exist in significant numbers in the national economy that Harper can perform. *Id.* Occupations representative of those the ALJ found Harper can perform include Semiconductor Loader (DOT 726.687-030/sedentary/svp 2) with 224,000 jobs in the national economy, Eyeglass Frame Packager (DOT 713.684-038/sedentary/svp 2) with 110,000 jobs in the national economy, and Shade Assembler (DOT 739.684-094/sedentary/svp 2) with 112,000 jobs in the national economy. Tr. 28.

"[C]onsidering [Harper's] age, education, work experience, and [RFC]," the ALJ concluded that Harper is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," *id.*, and resultantly found Harper not disabled under §§ 216(i) and 223(d) of the SSA. Tr. 29.

Harper argues for reversal of the ALJ's decision for two reasons. ECF No. 20. First, he contends that the ALJ did not support the ALJ's RFC determination with substantial evidence because, as Harper tells it, the ALJ "failed to incorporate" in his assessment any of the limitations

the consultative medical examiner noted about Harper's capacity for reaching. *Id.* at 6-9. Second, Harper argues that the VE's testimony was unreliable, preventing the Court from "meaningfully review[ing] if the ALJ met his substantial evidence burden" at the fifth step "to show a significant number of jobs [Harper] could perform." *Id.* at 9-11.

> ### A.    Substantial evidence does not support the ALJ's RFC finding.

In making his RFC finding, the ALJ "considered all symptoms . . . [,] medical opinions(s)[,] and prior administrative medical finding(s)." Tr. 23. These included the opinions of Dr. Brian Wiley, who examined Harper on August 31, 2022. Tr. 25. The ALJ found Dr. Wiley's opinion to be "persuasive." Tr. at 26. In light of this finding, Harper contends that the ALJ erred by "fail[ing] to explain why reaching limitations found in the persuasive opinion of Dr. Wiley were not incorporated into the RFC." ECF No. 20 at 7.

Dr. Wiley opined in relevant part that Harper has "limitations with walking, standing, lifting, carrying, bending, reaching, pushing, pulling, climbing, and unprotected heights." Tr. 323. The ALJ explicitly noted this part of Dr. Wiley's opinion. Tr. 26.

The ALJ's RFC describes Harper's capacity to lift, carry, sit, stand, walk, push, pull, operate foot controls, climb, balance, stoop, kneel, crouch, crawl, and see. Tr. 22. But it does not describe Harper's ability to reach. *See id.* Harper thus argues that this omission frustrates the Court's review of whether substantial evidence supported the RFC. ECF No. 20 at 8.

The Commissioner argues that Dr. Wiley's findings "did not include any specific degree of restriction on Plaintiff's reaching ability," nor did Dr. Wiley opine about the effect of any "frequency of reaching." ECF No. 24 at 6 (emphasis omitted). The Commissioner also notes that Dr. Wiley found that Harper's joints were stable and non-tender, with no redness, heat, or effusion, as well as no evidence of joint deformity. *Id.* (citing Tr. 322). Moreover, according to the

Commissioner, the ALJ's assessment sufficiently noted physical restrictions, "as the ALJ eliminated vast categories of occupations by limiting [Harper] to a reduced range of sedentary work." *Id.* (citing Tr. 22).

Harper replies that "Dr. Wiley did not opine that Plaintiff had *no* reaching limitations at all, which is what the RFC reflects." ECF No. 25 at 1 (emphasis in original). Further, "the ALJ never specified . . . that the limitation to sedentary work [the ALJ described in the RFC] would encompass any reaching limitations." *Id.* Instead, Harper argues, the Commissioner's "assert[ion] that a limitation to sedentary work would account for finding Dr. Wiley's [findings of] reaching limitations . . . is just *post hoc* rationale that attempts to intuit what the ALJ was thinking." *Id.* at 1-2 (emphasis in original).

The Court finds that substantial evidence does not support the Commissioner's final decision. In his opinion, the ALJ explicitly noted that Harper "had [a] decreased range of motion in his lower back, neck, legs, knees, hips, shoulders, and elbows," Tr. 25, and reiterated Dr. Wiley's "persuasive" opinion that Harper "had limitations with walking, standing, lifting, carrying, bending, *reaching*, pushing, pulling, climbing, and unprotected heights." Tr. 26 (emphasis added). Nonetheless, the ALJ's RFC finding excludes any mention of reaching limitations. *See* Tr. 25.

While "[t]he ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion," *Jackson v. Colvin*, 240 F. Supp. 3d 593, 602 (E.D. Tex. 2017) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)), nor "comment on every piece of evidence," *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010), he must all the same "build an accurate and logical bridge between the evidence and the final determination." *Id.* The ALJ does not satisfy this obligation.

At most, he writes the following: "Dr. Wiley also opined [Harper] would not have limitations with fine motor tasks," Tr. 26, "[Harper] was able to undress and dress himself," *id.*, "[Harper] required no assistance getting on and off [the] exam table," *id.*, "[Harper] was able to rise from a chair without difficulty," *id.*, "[Harper] exhibited no sensory deficit and his strength in his upper and lower extremities w[as] normal, as well as his motor tone," *id.*, "[Harper's] hand and finger dexterity were intact, and his grip strength was normal," *id.*, "[Harper's] joints were stable and nontender," Tr. 25, "[Harper] did not have redness, heat, or effusion," *id.*, and "[Harper] was able to zip, button, tie, and buckle on the dexterity bear, and he was also able to manipulate small objects with his hands." *Id.*

But none of these findings squarely bears on the operative inquiry of Harper's ability to reach. More importantly, these findings do not explain why the ALJ omitted Harper's reaching limitations from the RLC, especially since the ALJ himself acknowledged that Harper has a decreased range of motion. Tr. 25. Because the ALJ did not explain why one of Harper's noted physical limitations does not appear in the RFC, the Court is unable to review whether substantial evidence supported the decision not to assess the effect of that limitation on Harper's capacity to work.

The Commissioner's argument that the ALJ's assessment sufficiently noted physical restrictions since "the ALJ eliminated vast categories of occupations by limiting [Harper] to a reduced range of sedentary work" is unavailing. ECF No. 24 at 6 (citing Tr. 22). Instead, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 907 (N.D. Tex. 2008). "If those grounds are

inadequate or improper, the court is powerless to affirm the administrative action by substituting

what it considers to be a more adequate or proper basis." *Sec. & Exch. Comm'n v. Chenery Corp.*,

332 U.S. 194, 196-97 (1947). Further, the Commissioner's contention that Dr. Wiley's findings

"did not include any specific degree of restriction on Plaintiff's reaching ability," ECF No. 24 at

6, is unpersuasive. A review of the record demonstrates that Dr. Wiley indeed specifically noted

the maximum degrees of motion Harper was able to obtain for various joints, including those in

his arms and shoulders, which were each limited. Tr. 325-26.

But despite acknowledging Harper's limited range of motion, the ALJ did not incorporate

that limited range of motion into the RFC, nor offer a sufficient explanation regarding that

omission. Tr. 25. This inconsistency warrants remand for clarification because, at present,

substantial evidence does not support the RFC. *See Chenery*, 332 U.S. at 196-97 ("[W]e must

know what a decision means before the duty becomes ours to say whether it is right or wrong.");

*Bagwell v. Barnhart*, 338 F. Supp. 2d 723, 735 (S.D. Tex. 2004) (holding that the court can

"scarcely perform its assigned review function" when the ALJ does not reconcile apparent

inconsistencies in the decision that may affect the RFC finding).

### B.    The ALJ's hypotheticals to the VE were defective.

Next, Harper challenges the fifth step hypotheticals that the ALJ posed to the VE at the

administrative hearing. Harper specifically argues "the hypothetical question posed to the VE and

relied upon by the ALJ does not include any reaching limitations that may have impacted the

responses provided by the VE," leaving it "unknown whether the ALJ's ultimate determination to

deny [Harper's] benefits is supported by substantial evidence." ECF No. 20 at 9 (citing *Bowling v.*

*Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). The Commissioner counters by arguing that the "ALJ

is not required to incorporate limitations in the RFC that he or she did not find supported by the

record." ECF No. 24 at 7-8 (first citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002);

then citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). The Commissioner also contends

that by failing to ask the VE about reaching limitations at the administrative hearing, Harper has

waived his present challenge to the VE's testimony. *Id.* at 8 (citing *LeBlanc v. Shalala*, No. 93-

4337, 1994 WL 24937, at *4 (5th Cir. 1994) (per curiam)).

   To begin, the court's discussion of hypotheticals in *LeBlanc* does not control the result in

this case. There, the VE opined "that someone with [the claimant's] limitations could perform

small assembly-type jobs." *LeBlanc*, 1994 WL 24937, at *4. As the Fifth Circuit writes, "[i]t then

became [the claimant's] burden to show that he could not perform such work. . . . If [the claimant]

wished to challenge [the VE's] opinion, he had the burden and the opportunity to do so at the

hearing."). But the context of this passage concerned a claimant's counsel's failure to cross-

examine the VE on a hypothetical from the ALJ that incorporated all of the claimant's limitations

that the record supported. *See id.* ("[The claimant's] assertion that the ALJ's hypothetical did not

adequately incorporate the mental limitations noted by [the examining doctor] is incorrect. The

ALJ specifically referred [the VE] to [the doctor's report]."). At most, *LeBlanc* stands for the

proposition that challenges to the weight or credibility of a VE's opinion are waived if not raised

on cross-examination, not challenges premised on an allegedly deficient ALJ hypothetical that

engendered the challenged VE opinion to begin with. *LeBlanc* does not facially foreclose waiver

of this kind of objection.

   Harper contends that the ALJ in his case omitted a limitation that the record supported from

the hypotheticals the ALJ asked the VE. ECF No. 20 at 7; *see also* Tr. 56 ("Q. All right. In

considering the judge's hypothetical questions, did you consider any limitations beyond those

expressly stated by the judge? A. No, I did not.").

This contention has merit because the record indicates that one of Harper's physical limitations is his limited capacity to reach, and the ALJ found as much. *See* Tr. 323, 325-26, 25-26. Thus, the Commissioner's other argument that the ALJ did not err in crafting his hypotheticals because limitations unsupported by the record (that the ALJ did not recognize) do not require incorporation.

A review of the administrative hearing transcript finds that the ALJ did not incorporate Harper's reaching limitation in both hypotheticals that the ALJ posed to the VE. The ALJ first asked the following:

> For the first hypothetical, assume a hypothetical individual with the claimant's age and education with the past jobs you've described. Further assume he's limited to sedentary work with the following additional limitations in that he could operate foot controls occasionally bilaterally; he could occasionally climb ramps and stairs; he could never climb ladders, ropes, or scaffolds; he could never balance; he could occasionally stoop, kneel, crouch, or crawl, and he was able to avoid ordinary hazards in the workplace in regards to his visual limitations. Now, could that hypothetical individual perform any of the past jobs you described as actually or generally performed in the national economy? . . . Is there any other work in the national economy that that individual, that hypothetical individual could perform? If so, can you give me examples with numbers?

Tr. 54.

He then asked:

> All right. A second hypothetical[.] [I]f we included that he would be off task 15% of the time in an eight-hour workday, would he still be able to perform that other work?

Tr. 55.

Because the ALJ did not require the VE to consider Harper's capacity for reaching, the VE did not consider that limitation in determining that Harper could work as a Semiconductor Loader, an Eyeglass Spraying Packager (which the ALJ referred to as "Eyeglass Frame Packager," Tr. 28),

11

and Shade Assembler. Tr. 55. Because of this inconsistency, the Court cannot speculate how the VE would have responded if the hypothetical question had included the reaching limitations that the ALJ noted in his decision. *See Singleton v. Colvin*, No. 2:15-cv-0268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016). "[N]or can this [C]ourt speculate how the ALJ would have ruled if the VE's testimony was based on a non-defective hypothetical." *Id.* Therefore, the ALJ's reliance on the VE's testimony casts doubt on whether substantial evidence exists to support the ALJ's finding that Harper was not disabled. *See id.* at *5-6. The Court remands the case for this additional reason.

### C.    Harper's further argument about the VE's testimony is unsuccessful.

Finally, Harper asserts that the numbers of Semiconductor Loader, Eyeglass Spraying / Frame Packager, and Shade Assembler job positions that truly exist in the national economy are much lower than the quantities to which the VE testified. ECF No. 20 at 9-11. Harper points to an online source called Job Browser Pro that purportedly contains more accurate information. *Id.* Because the quantities the VE testified to are markedly different than the ones listed on Job Browser Pro, Harper argues that the VE's testimony was unreliable on this basis, necessitating remand. *Id.*

However, the Court's job is to determine whether substantial evidence exists to support the ALJ's decision, not to reweigh the evidence. *Hollis*, 837 F.2d at 1383. Here, the ALJ "determined that the [VE's] testimony [was] consistent with the information contained in the Dictionary of Occupational Titles [("DOT")]." Tr. 28. And the Social Security Regulations explicitly allow ALJs to use the DOT. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Reliance on the DOT is widespread in Social Security cases in all circuits of the federal judiciary. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (collecting the positions of the circuit courts on the

amount of authority accorded to the DOT against contrary VE testimony); *Hernandez v. Astrue*, No. A-06-CA-416 LY, 2007 WL 1746896, at *3 (W.D. Tex. June 15, 2007) (referring to the DOT as "the standard reference guide"); *see also Hunt v. Colvin*, No. 12-1117, 2013 WL 1969401, at *3 (C.D. Cal. May 12, 2013) ("That . . . *Job Browser Pro* data may differ from the VE's testimony is not enough to warrant remand." (emphasis in original)).

Whether the ALJ could have used a more current or precise source, or whether a more current or precise source than the DOT exists, are not determinations this Court can make. The Court's task is simply to determine if substantial evidence supported the ALJ's findings. Here, the ALJ relied on the testimony of the VE, based on the DOT, as is the standard practice. This ground does not require remand.

## IV.    CONCLUSION

Harper has shown that substantial evidence did not support the ALJ's RFC determination and that the ALJ's finding at the fifth step suffered in part from defective hypotheticals to the VE. Because substantial evidence does not support the ALJ's decision, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case.

It is so **ORDERED** on November 25, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE